16-1397 University of Notre Dame, USA, in England v. TJAC Waterloo, LLC, et al. Good morning. May it please the Court, Richard Bransky on behalf of CBI Construction Company, LLC. I'll also be arguing for TJAC Waterloo, LLC because of the overlap of the particular issues that we've raised. The Court committed error by confirming the partial decision. In contrary to the District Court's order, the parties by contract can't expand the scope of judicial review of the Court. The Court did not identify in its order any particular provision of the Federal Arbitration Act, nor did it identify any particular provision of the Federal Arbitration Act. If there is a clear agreement to bifurcate an arbitration into liability and damages, the Court can have jurisdiction to review the arbitral award of Part 1 liability. That is our law. Now, you did not argue to the District Court that the Supreme Court's Hall decision reverses our law on this point, but you've made that argument to us. Why haven't you waived the argument? Your Honor, because this Court has discretion to consider the argument. Well, why should we? Because of its potential impact of arbitrations and the way it would impact not only this case, but future cases. This is a, especially given the potential conflict between the Hall case, which came out after the two First Circuit cases, which are repeatedly relied on, and there's no reconciliation between, there's no case reconciling Hall, which does expressly limit. No, it doesn't. All right. Do you want to argue the Hall point and say we have no jurisdiction? I mean, that's essentially what we did in our brief, Your Honor, and it sounds like you understand that position. We do. All right. And then I'll just briefly hit the other particular issues that we've raised in our brief. Okay. Thank you. Your Honor, even if the Court were to apply the First Circuit Hart-type analysis and allow for bifurcation, the evidence, even though there was an agreement to bifurcate the two issues, there was no manifestation of an intent to allow the confirmation, and I think that's a distinction that needs to be made. Although Hart does allow for bifurcation, it makes an express representation in it that there needs to be this agreement, and the mere fact that there's an agreement to bifurcate doesn't automatically allow a court to conclude that that decision allows the initial decision to become independently confirmable. And there was a particular agreement in both the two First Circuit cases, there was agreement among the parties as to that they would be allowed to appeal it, that it would be confirmable. Here, there was no particular agreement, and the Court didn't identify any particular evidence which would manifest an intent of either party to allow it to become confirmable. In fact, to the contrary, if you look at the timing of the request for confirmation, it's about six months after the decision has entered. And there's no independent justification like there were in the other two cases that gave rise to coming in to confirm the order. In fact, in the Hart case, they were trying to vacate the order, and there was at least some practical justification for going in and having an initial review. Here, there is no practical justification for the confirmation of this partial award, especially given the fact that the Court hasn't even entered final judgment. It strikes me that a rule where the parties have agreed to bifurcate and there is ruling on liability, that even apart from damages, in terms of settlement discussions, people would like to know whether there's liability or not. And so the First Circuit rule would tend to be more amenable to the parties then resolving the damages issue by agreement once it's clear that one side or the other is going to have to pay damages. That's true, Your Honor, but it also has an associated cost with it, right? Yes, you're here arguing in front of us, but what other costs are there? The associated costs would be two appeals. I mean, essentially, once the underlying damages decision comes in, there is a potential for another appeal. Okay, can we move on to another issue? Yes, the final issue, Your Honor. The finality issue. Well, the finality issue was combined as part of the award itself. If you read the award itself, it specifically, the plain language indicates that it's not final. The Court relied on, not the plain, the Court made some conclusions, some inferences based on the language, and I think those inferences were inappropriate. Likewise, the reliance on collateral documents not specifically contained in the award, I think, was an error as well to confirm the Court's conclusion. What should have happened here is the award be read on its face, and there should have been a conclusion based on the language selected by the arbitrator, the expert in this case, manifesting an intent that it was final. I think it was an error for the Court to be honest. Of course, he later comes along and says, yep, even though there is that other language that you're relying on, my decision on liability was final. That's correct, Your Honor, but my point is... Why shouldn't we honor that? Because the decision itself should have been changed. This is a 10 million pound case, potential significant liability, and if there's errors... What translate into American dollars for me? It's like a $1.33 for every pound, so, you know, I'm going to, 12, 13 million dollars. I mean, it's significant that the decision itself should manifest on itself, and his version of finality may be different than... I mean, there's no, other than some conclusory statements in a letter, there's no specific evidence before the Court that it was quote-unquote final as we... Especially given the decision... Isn't the specific argument that you might make that it was not final, that with respect to a couple of the items on which the judge said, I make a final decision on liability, it was not clear exactly what remedial action would be necessary in order to correct it. And he said, we will leave the question of remedial action to stage two, i.e. the damages stage. But that did not manifest any equivocation about the fact that the determination that there had been a failure, i.e. leading to liability, was itself final. It simply left a remediation question open. If that is the best argument that you have, in other words, for the non-finality of it, isn't the question before us simply, do we allow the remediation question to be dealt with at the damages stage, and recognize a finding of liability in the sense that there is something that must be remediated? Isn't that the question that would focus your argument? That's correct, Your Honor. And to me, I think I focused on the word revisit. I think that's the word he may have used in the expert determination. And that, to me, means it may not be final if you're going to revisit it. But the only thing that he's going to revisit is something that he has, in fact, not ruled on yet, i.e. how do you fix the failure? And that, it seems to me, can reasonably be grouped with the question, what does it cost to fix the failure? In a normal case in which damages were an issue, it would not be unusual for one side to say, well, we can fix what's wrong this way at this number of dollars, and the other side say, no, fix it that way. At that number of dollars, there's nothing unusual about that. And I don't see that as a basis to say that on the question of there being something to remediate, it was a lack of finality. I agree, Your Honor, with the way you've phrased it. And if that was the intent from the language, then you're correct. It could easily be grouped in what they would call the quantum hearing, which would make sense. But the word revisit would be completely unnecessary to be read out of context. I mean, if there was a liability finding, there is a liability finding, period, even according to yours. And then as to quantum, as to the amount, well, we've already reserved the right to deal with that in a subsequent hearing. So the word revisit is unnecessary. Maybe his word choice could have been better. But is there any question about what he intended? I will be candid to say that in reading it, I didn't think there was any question about what he intended. At least with those four particular provisions, no. But as to the other language that we've identified in that decision, there certainly is some indication that it's not quote-unquote final. And I understand the point with the letter and the subsequent clarification, and I think I've dealt with that. One last thing is the ZVI argument. We specifically said the ZVI is not bound by the contract, and I think that's sufficient in our brief. Thank you. If there's no further questions. Good morning. May it please the Court. John Tarantino for Notre Dame. I'd like to just touch briefly on the three points. First on the jurisdictional point, in our brief we explain the differences in our view between the Hart case and the Hall case.  And our reading of Hall is in no way impacted by that decision. It's not reversed. It's not suggested in that case that it needs to be reversed or should be reversed. The issue in Hall was something in our view entirely different, and that was, may the parties contractually agree to change or expand the bases for vacating or modifying an arbitrator's award where those bases are set forth specifically by statute. And the Supreme Court said no. The statute sets forth the only bases to vacate, modify the award. It cannot be changed contractually. As we set forth in our papers, the Hart case is based on judicial law and interpretation, not statutory interpretation. And this Court made clear in Hart that if the parties by contract agreed to bifurcate in an arbitration, which is done not infrequently for the reasons Judge Lynch explained, because if the parties know in an arbitration procedure who is liable or whether there's liability, that often aids the second phase sometimes doesn't need to happen because the parties are then able to resolve the case. So it is not done infrequently here and, as we learned, in the United Kingdom as well. Yes. On that bifurcation point, he's made another argument, which is the agreement has to go beyond mere bifurcating the arbitral proceeding. It has to express an intent to allow judicial review as a result of that bifurcation. It's an argument he's making. I understand that's his argument. I have found nothing in the case to suggest that is required. The only authority that the appellants rely upon is a student law review article where the student suggests that there should be sort of a double requirement in such an agreement. Mr. Tarantino, you may have known the great First Amendment scholar, Henry Monaghan, who teaches at Columbia. Yes. When he was a young lawyer, he appeared before this court, and Bailey Aldrich asked him what his authority was for something, and he said, my law review article, Your Honor. And this young woman may be the next great scholar, but there is nothing in the case law, and particularly in this circuit's case law, that suggests such a requirement. And having litigated before this court many times and argued before this court many times, I know and understand if this court believes something is important to put in its decisions as a basis for jurisdiction, it generally sets forth what those are. And in heart, what it said was the agreement to bifurcate, not and to also require judicial review later on. It doesn't say that. So there may be practical reasons why the parties might consider such a requirement. But it is not a legal requirement here. The second point is that I think it's clear that any fair reading of the expert's second opinion, which he entitles final opinion, is that it is a final decision on liability. As Judge Burroughs determined, the language that's in there is a simple remnant left over from the preliminary determination, but everything in that opinion and decision makes it clear that it is final on the issues of liability. And later, when there's even a question about it, he further confirms, that is what I meant, that is what I said. And to address Justice Souter's questions to my brother, maybe a word other than revisit might have been a more particularized word to use, but it is going to be revisited in terms of how much is it going to cost? What's it going to cost to remediate this defect? That is the second phase. All of these issues on liability are only determined on the question of is there liability for these defects? What's it going to cost to remediate them? How much should Notre Dame be paid in a final award? Those are to be revisited in the second phase, the quantum phase. And then the last issue that I would just like to address briefly is ZVI. And not only did the expert determine that ZVI is a party. The agreement says ZVI is a party. ZVI signs the agreement, which allows for, among other things, the bifurcation. ZVI says in its papers that it is a nominal party only and that it really had nothing to do other than to employ a particular person. On page 34 of our brief, we set forth the schedule to the purchase and sale agreement, which contains the arbitration provision. It's incorporated into the agreement. It's a schedule that lists all of the things that ZVI is to do. And we set those forth in our papers. It is not simply to employ a particular person. And the myriad of things that ZVI is to do in that schedule are, of course, among the bases argued by Notre Dame that there is liability and ultimately will be damaged. If there are any further questions, I'll be happy to address them. Otherwise, I would stand on my brief. Thank you. Thank you.